UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE CALHOON, | No. 2:19-cv-02165-KJM-JDP |
| Plaintiff, | |
| v. | ORDER |
| CITY OF SOUTH LAKE TAHOE, et al., | |
| Defendants. | |

Defendants City of South Lake Tahoe Police Department ("Police Department"), City of South Lake Tahoe ("City"), and individually named defendant police officers (collectively "police officers"), move to dismiss plaintiff Wayne Calhoon's first and second claims against all defendants and all claims against the Police Department. Mot. to Dismiss ("MTD"), ECF No. 15, at 2. Plaintiff filed an opposition. Opp'n, ECF No. 19. Defendants replied. Reply, ECF No. 23. The court heard argument on May 15, 2020, with Edwin Bradley appearing for plaintiff and Beverly Roxas appearing for defendants. Hr'g Minutes, ECF No. 24. For the reasons below, the court DENIES in part and GRANTS in part defendants' motion to dismiss.

I.   BACKGROUND

On October 14, 2018, plaintiff, a friend and the friend's two daughters travelled to the Lake Tahoe region. First Am. Compl. ("FAC") ¶ 15, ECF No. 13. On the same day, plaintiff

1

1    alleges his friend, Ms. Desirae Drake, contacted the Police Department to request a "civil
2    standby" while she "completed the task of removing her personal items from the motel room
3    rented by the Plaintiff and then occupied by him." *Id.* ¶¶ 16–17.  Plaintiff alleges Ms. Drake did
4    not report or allege any misconduct in requesting the "civil standby." *Id.* ¶ 17.  Defendants
5    contend Ms. Drake called as a result of a "domestic dispute" with plaintiff.  MTD at 4.

6          In response to Ms. Drake's call, the police officers arrived at plaintiff's motel
7    room and "loudly demanded […] immediate entry."  FAC ¶¶ 18–19.  Plaintiff alleges the officers
8    did not have any of the following reasons to enter plaintiff's room: allegations of any "crime,
9    disturbance or public offense," a warrant authorizing a search or arrest, probable cause belief of a
10   felony, or "exigent circumstances" that required "immediate forcible entry."  *Id.*  Because of this,
11   plaintiff alleges he believed his constitutional rights permitted him to deny the officers entry into
12   his motel room.  *Id.* ¶ 20.

13         Plaintiff claims the police officers stated they would force entry and immediately
14   take him to jail should he not open the door; in response, plaintiff opened the security latch of the
15   door and observed one or more of the officers pointing a gun at him.  *Id.* ¶¶ 21–22.  Plaintiff then
16   closed the door and "retreated to the bathroom area of his room for safety" as a result of a
17   "reasonable and rational fear of bodily injury or death."  *Id.* ¶ 22.  Following this initial retreat,
18   plaintiff alleges he received further threats from the police officers and "in an effort to deescalate
19   the dangerous situation caused by the defendant officers," he agreed to exit the motel room.  *Id.*
20   ¶ 23.  Upon plaintiff's exiting the room, the police officers handcuffed plaintiff and allegedly
21   "manipulate[d] his body" by kicking his leg and foot and pushing his arms behind his back.  *Id.*
22   ¶¶ 23–24.  Some of the police officers allegedly searched plaintiff's room over his objection;
23   nobody else was present to consent to this search.  *Id.* ¶ 25.  The officers then released plaintiff
24   from arrest.  *Id.* ¶ 26.

25         On October 25, 2019, plaintiff filed suit against defendants.  Compl., ECF No. 1.
26   On January 6, 2020, after discussions with defendants, plaintiff filed an amended complaint.  *See*
27   *generally* FAC; *see also* MTD at 2.  He names as defendants the City and the Police Department,
28   which he says are liable under the principle of respondeat superior; the police officers allegedly

involved in the events in question: Nick Carlquist, Derek Simon, Joseph Acker, Travis Cabral and Matthew Morrison; and Does 2 through 25.[1]  FAC ¶¶ 2–13.  Plaintiff alleges the officers all were employed by the City of South Lake Tahoe and "voluntarily swore to uphold the Constitution of the United States of America."  *Id.* ¶¶ 4–8.

The complaint asserts five claims in total: (1) municipal liability for violation of civil rights under 42 U.S.C. § 1983 by way of an unconstitutional custom, practice or policy; (2) failure to adequately hire, train, and supervise police personnel under 42 U.S.C. § 1983; (3) assault and battery; (4) false arrest; and (5) general negligence.  *Id.* ¶¶ 15–67.  In the pending motion, defendants challenge all claims against the Police Department and all federal claims against all defendants.  MTD at 5–9.

II.     LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting

---

[1] If defendants' identities are unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds.  *Id.*  The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within ninety days of the complaint.  Fed. R. Civ. P. 4(m).

3

*Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of complaint on 12(b)(6) motion).

III.   DISCUSSION

    A.   Section 1983 (First and Second Claims): South Lake Tahoe Police Department

Defendants argue the court must dismiss the Police Department as an improper defendant because all claims against them are duplicative of those pled against the City. MTD at 5–6 (citing *Wilson v. City of Bakersfield*, No. 1:16-CV-00387-JLT, 2016 WL 2997496, at *8 (E.D. Cal. May 23, 2016)). At hearing, plaintiff conceded this point. The court GRANTS defendants' motion to dismiss the Police Department, without leave to amend.[2]

---

[2] In *Tennyson v. Cty. of Sacramento*, No. 2:19-cv-0429 KJM, 2020 WL 4059568 (E.D. Cal. Jul. 20, 2020), this court determined a local law enforcement agency, such as a sheriff's department, does constitute a separate legal entity under Section 1983. Because plaintiff here conceded this argument at hearing, the court dismisses the Police Department without further discussion.

4

B. <u>Section 1983 (First and Second Claims): City of South Lake Tahoe</u>

According to defendants, the court must dismiss claims against the City because plaintiff has failed to state a plausible claim for relief under both an unconstitutional custom or policy and a failure to adequately hire, train and supervisory theory of *Monell* liability.  MTD at 6–8.  Plaintiff argues his allegations regarding the actions of defendant police officers, who made up almost the entirety of the City Police Department, adequately plead an unconstitutional custom or policy, as well as the City's failure to adequately hire, train and supervise its employees.  Opp'n at 5–9.  The court turns to defendants' specific arguments regarding plaintiff's unconstitutional custom or policy and negligent hiring, training and supervision claims under Section 1983.

1. <u>Unconstitutional Custom, Practice or Policy</u>

Defendants argue plaintiff's complaint is "completely devoid of any facts, or even allegations" necessary to establish the City has an "official policy or custom" that supports plaintiff's *Monell* claim.  MTD at 6–7.  Plaintiff argues he does provide allegations of fact necessary to demonstrate an unconstitutional custom; these allegations reveal "a shared belief and understanding by defendants" that shows they either endorsed or accepted the unconstitutional actions.  Opp'n at 5–6.

Under *Monell*, municipalities "are responsible only for their *own* illegal acts," *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (citations and internal quotation marks omitted).  "They are not vicariously liable . . . for their employees' actions." *Id.* (citations omitted).  To successfully establish *Monell* liability, a plaintiff must show "'(1) that [he or she] possessed a constitutional right of which [he or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).  "Official . . . policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and

/////

practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61(citations omitted).

"[A] custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (citations and internal quotation marks omitted). "[E]vidence of inaction—specifically failure to investigate and discipline employees in the face of widespread constitutional violations—can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality." *Id.* at 1234 n.8 (emphasis omitted).

Prior to the Supreme Court's decisions in *Twombly* and *Iqbal*, *supra*, a claim for municipality liability could "withstand a motion to dismiss 'even if . . . based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988) (citing *Shah v. Cty. of L.A. Intelligence & Coordination Unit*, 797 F.2d 743, 747 (9th Cir. 1986)). Since *Twombly* and *Iqbal*, the Ninth Circuit has articulated a two-part test to govern evaluation of allegations in a complaint or counterclaim:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2012). Thus, the court considers a motion to dismiss a claim of municipal liability under a heightened pleading standard focusing on plausibility. *See Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009) ("*Iqbal* has made clear that conclusory, 'threadbare' allegations that merely recite the elements of a cause of action will not defeat a motion to dismiss . . . . In light of *Iqbal*, it would seem that the prior Ninth Circuit pleading standard for *Monell* claims (i.e. 'bare allegations') is no longer viable.").

6

Here, plaintiff does not sufficiently plead his claims of an unconstitutional custom or policy. He alleges defendants violated his constitutional rights to be free from unreasonable search and seizure, right to free association as well as right to privacy. FAC ¶¶ 28, 32. He says in summary fashion that a "general policy and/or custom within the City of South Lake Tahoe Police Department" led to these violations and "gives rise to *Monell* liability for the City of South Lake Tahoe." *Id.* Plaintiff emphasizes how the "actions by the defendant police officers, and each of them, acting in concert and with common design," constitute these alleged violations, thus demonstrating a general policy or custom allowed them to act in this way. *Id.* ¶ 31. Plaintiff also take the position a reasonable inference can be drawn of an unconstitutional custom from the City's failure to investigate his written complaint, *id.* ¶¶ 14, 32, a claim defendants argue as requiring too far a logical jump from initial evidence to conclusion to withstand dismissal.

At hearing, the court pressed plaintiff's counsel on whether he could point to any other specific incidents of previous constitutional violations, that might be pled in an amended complaint. Plaintiff's counsel stated that without discovery, he was unaware of such other incidents, and acknowledged the claim requires the court to draw some inferences. Counsel was unable to flesh out the conclusory pleadings, including for example, the allegation that because "the entire day shift or substantially the entire day shift" of the relatively small Police Department participated in the alleged events, these actions were "consistent with the custom of practice endorsed by or approved by or accepted by" the City. *Id.* ¶ 32.

Plaintiff relies primarily on two cases for his position that his pleadings are sufficient to support a reasonable inference. *See* Opp'n at 5 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 n.10 (1986) (plurality opinion); *Board of Cty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)). These cases, however, provide little more than a general description of the differences between a "policy" and a "custom" for purposes of municipal liability under *Monell*. *See Pembaur*, 475 U.S. at 481 n.10 ("[L]ocal governments, like every other § 1983 'person,' …may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.") (quoting *Monell*, 436 U.S. at 690–91); *Board of Cty.*

*Com'rs of Bryan Cty.*, 520 U.S. at 404 ("Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.") (citing *Monell*, 436 U.S. at 690–91) (additional citations omitted).  The cases do not support plaintiff's arguments the alleged involvement of all the City's police officers in one incident evinces an unconstitutional custom.

Rather, courts generally only are willing to infer an unconstitutional policy or custom when the plaintiff provides multiple incidents of prior, similar conduct, as opposed to the one previous incident plaintiff alleges here.  *See, e.g., Estate of Alejandro Sanchez v. Cty. of Stanislaus*, No. 1:18-CV-0977-DAD-BAM, 2019 WL 1745868 (E.D. Cal. Apr. 18, 2019) (requiring plaintiffs' complaint to include "sufficient factual allegations" to plausibly allege the existence of a policy or custom of excessive force when plaintiffs pointed to at least three prior cases involving similar facts and eventual settlement); *see also Lemus v. Cty. of Merced*, No. 1:15-cv-00359-MCE-EPG, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*, 711 Fed. App'x 859 (9th Cir. 2017) ("[W]here more than a few incidents are alleged, the determination appears to require a fully-developed factual record.").  Here, without additional allegations of similar, prior incidents, plaintiff has not stated a plausible claim for relief under an unconstitutional custom *Monell* theory of liability.

The court GRANTS defendants' motion to dismiss plaintiff's municipal liability claim against the City for an unconstitutional custom.  While the court grants leave to amend, any amendment must be fully consonant with Federal Rule of Civil Procedure 11.

2.    <u>Ratification</u>

Although plaintiff does not explicitly disaggregate a ratification claim from his unconstitutional custom claim under *Monell*, plaintiff also uses the term ratification in the operative complaint to describe defendants' actions following the alleged unconstitutional violations.  For the sake of completeness and clarity, the court analyzes plaintiff's apparent ratification claim separately from his unconstitutional custom claims.  Plaintiff alleges "ratification of this misconduct by the City on grounds that include": (1) the City's failure to

8

investigate plaintiff's written complaint to the City following the alleged events; (2) the City's failure to "counsel, discipline, re-train, punish or otherwise direct the defendant officers to change their practices"; and (3) the events of October 14, 2018 occurred "as a coordinated operation and spontaneous joint actions by the entire day shift or substantially the entire day shift," of the Police Department, "without objection or exception" of any officer, including supervisory officers, thereby showing their post hoc conduct was consistent with the custom or practice of the City. FAC ¶ 32.

A plaintiff may claim *Monell* liability where an "official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992). "A policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Furthermore, "a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." *Id.* Rather, ratification requires the authorized policymaker to make a "conscious, affirmative choice." *Gillette*, 979 F.2d at 1347. Ratification "and thus the existence of a *de facto* policy or custom, can be shown by a municipality's post event conduct, including its conduct in an investigation of the incident." *Dorger v. City of Napa*, No. 12-cv-440 YGR, 2012 WL 3791447, at *5 (N.D. Cal. Aug. 31, 2012) (emphasis in original) (citing *Henry v. Cty. of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997)). To ultimately prove ratification occurred, a plaintiff must also show the ratification was (1) the cause in fact, and (2) the proximate cause of the constitutional deprivation. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

a) <u>Final Policymaker</u>

Whether an official is a policymaker for *Monell* purposes is a question governed by state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). "'Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.'" *Id.* (quoting *Pembaur*, 475 U.S. at 483).

/////

Here, plaintiff has not identified a final policymaker. As discussed below, he brings a separate, supervisory liability claim against Sergeant Cabral. FAC ¶ 41. But with respect to ratification, plaintiff claims the responding police officers took their actions "without objection or exception of" supervisory officers, without identifying those supervisors. *Id.* ¶ 32. In addition, he pleads the officers' conduct was "endorsed by or approved by or accepted by the City of South Lake Tahoe Police Department and the City of South Lake Tahoe, including its elected officials and city managers." *Id.* Although plaintiff pleads that supervisory officers, including Sergeant Cabral, essentially ratified the alleged unconstitutional actions of the individual officers and that more senior officials approved these actions, none of his allegations comes close to pleading who the final policymaker was under state law. *Compare* FAC ¶¶ 32, 41, *with Larez v. City of Los Angeles*, 946 F.2d 630, 633, 646 (9th Cir. 1991) (observing chief of police was "an official policymaker for the City on police matters"). Likewise, plaintiff's claims against elected officials and city managers in South Lake Tahoe do not identify these officials as final policymakers under state law. Plaintiff's allegations against these officials also fail to state a plausible claim for relief under a ratification theory. Ratification, however, generally requires more than acquiescence." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014). The elected officials and city manager's alleged endorsement, acceptance, approval, or their "mere failure to discipline [the officers] does not amount to ratification of their allegedly unconstitutional actions." *Id.*

For this reason alone, the court finds plaintiff has not sufficiently pleaded a ratification theory. The court need not reach the second prong of a ratification claim regarding whether a final policymaker both "ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette*, 979 F.2d at 1346–47.

The court GRANTS defendants' motion to dismiss plaintiff's municipal liability cause of action based on a ratification theory of liability, but with leave to amend if possible.

3.   Failure to Hire, Train or Supervise (Second Claim)

With respect to plaintiff's claims that defendants failed to adequately train, hire and supervise police personnel, defendants contend the complaint did not "plausibly allege any

10

1  type of governmental policy that rises to the level of a failure to adequately train, hire or
2  supervise, is so deficient that it shows 'deliberate indifference to the rights' of those with whom
3  the employees will interact." MTD at 7–8 (citing *Connick*, 563 U.S. at 61); *see also* Reply at 3–4.
4  Plaintiff resists this characterization, as reviewed below. Opp'n at 7.

5  Successful claims for negligent training require plaintiffs to allege the following:
6  "(1) an inadequate training program, (2) deliberate indifference on the part of the [municipality]
7  in adequately training its law enforcement officers, and (3) whether the inadequate training
8  'actually caused' a deprivation of [. . .] constitutional rights." *Merritt v. City of Los Angeles*,
9  875 F.2d 765, 770 (9th Cir. 1989). The "deliberate indifference" standard is met when "the need
10 for more or different training is so obvious, and the inadequacy so likely to result in the violation
11 of constitutional rights, that the policymakers of the city can reasonably be said to have been
12 deliberately indifferent to the need." *City of Canton v. Harris,* 489 U.S. 378, 390 (1989). For
13 example, if police activities in arresting fleeing felons "so often violate constitutional rights that
14 the need for further training must have been plainly obvious to the city policymakers," then the
15 city's failure to train may constitute "deliberate indifference." *Id.* at 390 n.10. "Only where a
16 failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as
17 defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* at 389. And
18 only under such circumstances does the failure to train constitute "a policy for which the city is
19 responsible, and for which the city may be held liable if it actually causes injury." *Id.* at 390.

20 The Ninth Circuit's opinion in *Starr*, 652 F.2d at 1216, provides an example of a
21 complaint sufficiently alleging deliberate indifference. There, the plaintiff "specifically allege[d]
22 numerous incidents in which inmates in Los Angeles County jails [had] been killed or injured
23 because of the culpable actions of the subordinates of Sheriff Baca." *Id.* The complaint also
24 alleged the sheriff there "was given notice of all of these incidents," including "in several reports,
25 of systematic problems in the county jails under his supervision that [had] resulted in these deaths
26 and injuries." *Id.* Additionally, the complaint alleged "Sheriff Baca did not take action to protect
27 inmates under his care despite the dangers, created by the actions of his subordinates, of which he
28 had been made aware." *Id.*

Here, plaintiff articulates elements of a failure to adequately hire, train or supervise claim, but does not provide the substantive allegations of prior conduct required to survive dismissal.  The City did not, according to plaintiff, meet its obligation to ensure police officers understood "the proper execution of their duties and adherence to limitations on their authority as police officers imposed by the Constitution of the United States."  FAC ¶¶ 37–38.  In support of this notion, plaintiff pleads what he describes as five "acts or failures to act" on behalf of the City: (1) failure to "screen and where, indicated, to exclude" police officer candidates not suitable for the job due to "their maturity, IQ, temperament, education, past conduct and personal traits"; (2) failure to train police officers for "civil standby" requests like the one here; (3) failure to train and supervise police officers with regard to the limits of their power to enter private dwellings; (4) failure to train and supervise police officers with regard to their "lawful authority" to detain and arrest people; (5) failure to train and supervise police officers with regard to the use of firearms and handcuffs.  *Id.*  ¶ 39.  Plaintiff alleges the City ratified these "acts or failures to act" by not disciplining or properly training any officers involved.  *Id.*  ¶ 41.

Although plaintiff describes the alleged flaws with defendants' hiring and training of police officers at a very generalized level, plaintiff here as well does not identify similar prior conduct as necessary to show a "pattern of similar constitutional violations by untrained employees."  *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (quoting *Connick*, 563 U.S. at 58 (additional citations omitted)).  To plead such a pattern, a plaintiff must allege more than "isolated incidents of criminal wrongdoing."  *Id.*  Here, plaintiff relies on his own written complaint against the City based on the one incident, but he does not point the court to any other prior incidents following which defendants neglected to respond to the resulting complaints.  Without such allegations, plaintiff has failed to state a plausible claim of defendants' failure to hire, train or supervise under Section 1983.  *Cf. Coe v. Schaeffer,* No. 2:13-CV-00432-KJM-CK, 2014 WL 1513305, at *4 (E.D. Cal. Apr. 11, 2014) (denying motion to dismiss second amended complaint where plaintiffs alleged in part "defendants knew or should have known of complaints against [defendant officer] for similar conduct as in this case 'because other citizens had made verbal and written complaints against [defendant officer]' . . . and defendants told

12

[defendant officer] Schaeffer that despite the complaints, only 'a perfunctory investigation would be performed,' Schaeffer 'would be exonerated,' and she would not be punished" in contrast to the previously dismissed complaint's "single allegation of a 'history of misconduct'").

The court GRANTS defendants' motion to dismiss plaintiff's municipal liability claim against the City for failure to train or supervise, with leave to amend if possible.

C. Supervisory Liability (Second Claim): Sergeant Cabral

Defendants argue the court should dismiss plaintiff's supervisory claims against Sergeant Cabral because the "complaint makes a bare bones conclusory statements [sic] about that subject incident." MTD at 8; Reply at 4. Defendants assert these claims "fail[] to state facts that allege that Sergeant Cabral's actions or inactions, rose to the level of 'deliberate indifference' or that Sergeant Cabral, through his own individual actions violated the constitution, acquiesced in the alleged constitutional violation." MTD at 8. Plaintiff disagrees, asserting he pled "sufficient claims against the supervisory officer, defendant Cabral, who had actual knowledge gained while present at the scene and whose response was so inadequate as to show the deliberate indifference to or tacit approval of the wrongful conduct." Opp'n at 7.

It is well established that "[a] supervisory official is liable under § 1983 so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez*, 891 F.3d at 798 (citing *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018)). The causal connection is established "by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* (alteration in original) (quoting *Starr*, 652 F.3d at 1207–08). Therefore, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208.

/////

Here, plaintiff adequately pleads the supervisory claims against Sergeant Cabral by including factual allegations of Sergeant Cabral's knowledge of and refusal to interject himself in the actions of his subordinate officers in a way that caused the infringement of plaintiff's constitutional rights. Plaintiff alleges Sergeant Cabral was present during the events as a field supervisor; on that day, Sergeant Cabral allegedly violated plaintiff's constitutional rights because he did not: (1) "sufficiently manage and supervise" the police officers; and (2) "give direction or to otherwise intervene or control these defendant officers under the circumstances alleged herein." FAC ¶ 41. These factual allegations, combined with plaintiff's previous allegations describing the police officers' alleged actions, *id.* ¶¶ 18–26, amount to more than "bare bones conclusory statements." MTD at 6. Instead, they state a plausible claim of relief. If taken as true as required, plaintiff's factual allegations show Sergeant Cabral knew of unconstitutional conduct by his subordinates and did not terminate these actions, satisfying each of the elements of a successful supervisory liability claim. In so finding, the court observes defendants do not appear to recognize plaintiff need only allege facts showing Sergeant Cabral "knowingly refus[ed] to terminate a series of acts by others."

The court DENIES defendants' motion to dismiss plaintiff's claim against Sergeant Cabral.

D.  Section 1983 (First and Second Claims): Individual Police Officers

Defendants also argue plaintiff has not satisfactorily pled any cause of action under Section 1983 against the individual police officers. MTD at 9; Reply at 4–5. Instead, defendant maintains, plaintiff just "generally claims" the police officers violated his rights, but "does not allege with sufficient facts what actions on behalf of what officer violated what constitutional right." MTD at 9. In his opposition, plaintiff does not address defendants' position that the court should dismiss his claims against the individual police officers. *See* Opp'n 6–8. At hearing, plaintiff also did not contest defendants' request for dismissal of the individual police officers. It is not for the court to litigate plaintiff's case, and so the court will dismiss the claims against the individual line police officers, Nick Carlquist, Derek Simon, Joseph Acker and

/////

14

Matthew Morrison, without leave to amend given that plaintiff provides no reason for the court to conclude amendment is possible.

IV.     CONCLUSION

        For the foregoing reasons, the court orders as follows:

1. Defendants' Motion to Dismiss all claims against the South Lake Tahoe Police Department is GRANTED, without leave to amend. The South Lake Tahoe Police Department is hereby DISMISSED;

2. Defendants' Motion to Dismiss plaintiff's municipal liability claim for an unconstitutional custom or policy against the City is GRANTED, with leave to amend;

3. Defendants' Motion to Dismiss plaintiff's municipal liability claim based on a ratification theory of liability against the City is GRANTED, with leave to amend;

4. Defendants' Motion to Dismiss plaintiff's municipal liability claim for failure to adequately hire, train or supervise personnel, as against the City is GRANTED, with leave to amend;

5. Defendants' Motion to Dismiss plaintiff's supervisory liability claim against Sergeant Cabral is DENIED, and this claim may be included in any amended complaint; and

6. Defendants' Motion to Dismiss plaintiff's claims against the individual officers named in the complaint is GRANTED, without leave to amend. Defendants Nick Carlquist, Derek Simon, Joseph Acker and Matthew Morrison are hereby DISMISSED from this action.

Any second amended complaint shall be filed within twenty-one (21) days of the date this order is filed. This order resolves ECF No. 16.

IT IS SO ORDERED.

DATED: October 7, 2020.

                                             CHIEF UNITED STATES DISTRICT JUDGE