UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Wayne S. Calhoon,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>City of South Lake Tahoe Police Dep't, et al.,<br><br>　　　　　　　　Defendants. | No. 2:19-cv-02165-KJM-JDP<br><br>ORDER |

In this civil rights action arising from an altercation between South Lake Tahoe police officers and plaintiff Wayne Calhoon, defendant Sergeant Travis Cabral moves for partial summary judgment on Calhoon's second claim for failure to adequately supervise police personnel under 42 U.S.C. § 1983. For the reasons stated below, Cabral's motion is **granted in part and denied in part.**

I.  **BACKGROUND**

The court has compared the parties' statements of fact, *see* Pl.'s Resp. to Statement of Undis. Mater. Facts (Resp. to UMF), ECF No. 87–1; Def's Statement of Undis. Mater. Facts (UMF), ECF No. 86–2; Computer Assisted Dispatch Log (CAD) Ex. 2, ECF No. 87–2, and reviewed the cited deposition transcripts and available cell phone footage, Cell Video, Ex. 4, ECF No. 87–2, provided by plaintiff and lodged with the court in USB format, *see* Notice of Lodging, ECF No. 88. Based on this review of the record, the court finds the following facts are either undisputed or, if disputed, are properly construed in the light most favorable to Calhoon.

A. **Evidentiary Objections**

First, Cabral objects to Calhoon's use of Drake's cell phone video and a police log of the incident, arguing the evidence is both irrelevant and not authenticated. Reply at 5; Cell Video; CAD. Parties may object to evidence cited to establish undisputed facts. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010). A court may consider evidence that would be "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). But the evidentiary standard for admission at the summary judgment stage is lenient: A court may evaluate evidence in an inadmissible form if the evidentiary objections could be cured at trial. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006). In other words, admissibility at trial depends not on the evidence's form, but on its content. *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Though the cell phone video and police log are not currently authenticated, the court may consider them at this stage because nothing about the contents suggests they would be inadmissible at trial if properly authenticated. *See Burch*, 433 F. Supp. 2d at 1119–20.

B. **Factual Background**

Wayne Calhoon, Desiree Drake and Drake's two children shared a motel room at the South Lake Tahoe Motel 6 on October 14, 2018. UMF ¶ 1. That morning, South Lake Tahoe Police Department (SLTPD) received a 911 call from Drake, requesting a civil standby to help remove her items from the room. *Id.* ¶ 2. Drake also shared she was feeling harassed and threatened by Calhoon. *Id.* In response, SLTPD sent Officers Matthew Morrison, Joseph Acker, Nick Carlquist, Derek Simon and Sergeant Travis Cabral to assist. *Id.* ¶¶ 4–6. Acker, Carlquist and Simon arrived at the scene at 7:59 a.m. Deposition of Officer Joseph Acker Ex. F (Acker Dep.) at 40:23–24, ECF No. 86–3; Deposition of Wayne Calhoon Ex. 5 (Calhoon Dep.) at 39:21–25, 40:1–4, ECF No. 87–2. Acker interviewed Drake, who was outside the room with her children, and determined Calhoon was preventing Drake from retrieving her belongings. UMF ¶ 5; Acker Dep. at 29:4–14.

Officers then announced themselves and knocked on the hotel room door twice. Calhoon Dep. at 72:2–24. Calhoon did not respond. *Id.* At approximately 8:08 a.m., officers again

knocked on the door, this time more vigorously, and demanded Calhoon open the door. *Id.* at 73:6–12; Acker Dep. at 40:22. Calhoon, who had the door's safety lock engaged, partially opened the door and saw a pistol pointed between his head and breastbone. Calhoon Dep. at 73:15–25. Calhoon closed the door and retreated into the room, fearful for his life. *Id.* at 76:18–22. At some point after Calhoon closed the door, officers threated to break it down and arrest him for failing to comply with police orders. *Id.* at 77:9–14.

Morrison and Cabral then arrived at the scene at 8:14 a.m. Deposition of Officer Matthew Morrison Ex. G (Morrison Dep.) at 19:24–25, 20:1–3, ECF No. 86–3; Calhoon Dep. 39:21–25, 40:1–4, CAD at 2; Rule 26 Report Ex. 1, ECF No. 87–2. Morrison immediately spoke to the on–site motel manager, James Hightower. Morrison Dep. at 21:5–13. Hightower testified he told Morrison Calhoon was on the motel's do not rent list and "should not have been checked in in the first place." Deposition of James Hightower Ex. K (Hightower Dep.) at 42:20–25, 43:1–4, ECF No. 86–3. Morrison testified Hightower wanted Calhoon to vacate the room. Morrison Dep. at 24:1–4.

Morrison radioed the other officers and informed them Hightower requested Calhoon be evicted. Morrison Dep. at 24:15–18; Deposition of Travis Cabral Ex. I (Cabral Dep.) at 99:17–25, 100:1–15, ECF No. 86–3. He also shared Hightower wanted the officers to inform Calhoon of the eviction. Morrison Dep. at 24:15–18; Cabral Dep. at 99:17–25, 100:1–15. Drake then filmed the officers ordering Calhoon to exit the room, handcuffing him and allowing Drake to enter the room. Cell Video, 00:50–01:04. Calhoon opened the door and complied with officers' commands while they detained him and applied handcuffs. Calhoon Dep. at 78:25, 79:1–25, 80:1–25, 81:1–10.

Carlquist detained and handcuffed Calhoon while Cabral watched.[1] Calhoon Dep. at 83:18–20; Cabral Dep. at 110:14–25, 111:1–22; Carlquist Dep. at 102:21–23. While detaining

---

[1] The court notes discrepancies in Calhoon's testimony regarding the officers' use of excessive force. In his deposition, Calhoon states Carlquist "inspected [his] handcuffs so they weren't too tight and that I wasn't injured," Calhoon Dep. at 83:17–19, but in his interrogatory responses, Calhoon claims Acker, not Carlquist, used excessive force in detaining him and refused to loosen handcuffs, Response to Interrogatory, Ex. 1 (Response) at 14, ECF No. 87–2.

3

1  him, Carlquist kicked Calhoon's left knee and groin, leaving injuries for which Calhoon needed
2  crutches and a leg brace. Calhoon Dep. at 88:24–25, 89:1–9. Carlquist also conducted a control
3  hold that tore Calhoon's pectoral muscles, *id.* at 89:19–24, and injured Calhoon's wrists,
4  Response at 10. Officers refused to loosen handcuffs despite Calhoon's complaints. *Id.* at 14.
5  Officers then searched the room, including the refrigerator, without consent. Calhoon Dep. at
6  86:12–18; Cabral Dep. at 77:16–24; Morison Dep. at 29:19–25, 30:1–25, 31:1–2. Calhoon was
7  handcuffed for 30-40 minutes. Calhoon Dep. at 88:2–5. Calhoon was escorted to the hospital
8  later that day because of physical injuries sustained from the police interaction and a "heart a-
9  fibrillation" problem. Opp'n at 11 n.2, ECF No. 87; Calhoon Dep. at 83:14–24.

10              **C.      Procedural Background**

11  Calhoon initially brought this lawsuit against the City of South Lake Tahoe, the police
12  department and all officers involved. Initial Compl., ECF No. 1. In October 2020, after multiple
13  amended complaints, the court dismissed the actions against the police department and City and
14  the § 1983 claims against Officers Morrison, Acker, Carlquist and Simon.[2] Dismissal Order, ECF
15  No. 38. Calhoon then filed a fourth amended complaint, which included supervisory liability
16  claims brought under 42 U.S.C. § 1983 against Sergeant Cabral. Fourth Am. Compl. (Compl.),
17  ECF No. 64. Cabral now moves for partial summary judgment, arguing he is protected by
18  qualified immunity and even if he were not, Calhoon does not provide evidence of constitutional
19  violations. *See generally* Mot, ECF No. 86. Calhoon opposed, Opp'n, and Cabral replied, Reply,
20  ECF No. 90. The court heard oral argument on December 9, 2022. Mins. Hr'g, ECF No. 94.
21  Edwin Bradley appeared for Calhoon and Daniel Bardzell appeared for Cabral. *Id.* The court
22  granted the parties' leave to file supplemental briefing on the issue of supervisory liability and
23  excessive force. *Id.* Cabral filed a supplemental brief in support of his motion, Cabral Supp.
24  Brief, ECF No. 96, and Calhoon filed a supplemental brief in opposition, Calhoon Supp. Brief,
25  ECF No. 97.

---

Defendants maintain it was Carlquist who applied the handcuffs. Deposition of Nick Carlquist Ex. H (Carlquist Dep.) at 102:21–23, ECF No. 86–3

[2] Calhoon maintains this court "committed reversible error when it dismissed the patrol officers after Defendants' Rule 12 motion." Opp'n at 8 n.1.

## II. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

As a general matter, the moving party bears the initial burden of showing the district court "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). Both parties must "cit[e] to particular parts of materials in the record . . . or show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts.").

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Where a genuine dispute exists, the court draws inferences in plaintiffs' favor. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014).

The Supreme Court has taken care to note district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255.

**III.     ANALYSIS**

    **A.     Supervisory Liability**

Calhoon brings supervisory liability claims against Cabral for violations of Calhoon's Fourth Amendment right to be free from excessive force and unreasonable search and seizure. *See generally* Compl.; Reply at 9.  Specifically, Calhoon alleges: (1) Cabral failed to train officers in conducting civil standbys, (2) Cabral failed to supervise subordinate officers and intervene when officers assaulted Calhoon by pointing a gun at him at him, conducted an unreasonable search of the motel room and used excessive force to detain him.  Compl. ¶¶ 34–42; Reply at 11–12.  Cabral argues Calhoon does not properly allege any constitutional violations and asserts qualified immunity.  *See generally* Mot.

It is well established that "[a] supervisory official is liable under § 1983 so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018)).  The causal connection is established "by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* (alteration in original) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)).  Therefore, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). "A supervisor is liable under § 1983 for a subordinate's constitutional violations 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" *Maxwell v. County of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989)).

1       Additionally, regardless of whether an officer is a supervisor, all "officers have a duty to
intercede when their fellow officers violate the constitutional rights of a suspect or other citizen."
*United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir.1994), *rev'd on other grounds*, 518 U.S.
81 (1996). "[O]fficers can be held liable for failing to intercede" if they had the opportunity to do
so. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), *as amended* (Oct. 31, 2000); *see
also Atencio v. Arpaio*, 674 F. App'x 623 (9th Cir. 2016) (unpublished) (holding a supervisor who
witnessed an individual detainee being kicked by a fellow officer was not liable because there
was no evidence the supervisor himself participated in the excessive force, knew it would occur
or "had a realistic opportunity to stop" it.); *Est. of Adkins, by & through Adkins v. County of San
Diego*, 384 F. Supp. 3d 1195, 1203 (S.D. Cal. 2019) (finding no liability for an officer who "did
not have a realistic opportunity to intervene given that the alleged violation occurred within a
matter of seconds . . . .").

"Because supervisory liability is personal liability, an official against whom a claim of
supervisory liability is advanced may assert the affirmative defense of qualified immunity." *Doe
v. City of San Diego*, 35 F. Supp. 3d 1214, 1225 (S.D. Cal. 2014). "Qualified immunity is a
judge-made doctrine designed to 'balance[ ] two important interests—the need to hold public
officials accountable when they exercise power irresponsibly and the need to shield officials from
harassment, distraction, and liability when they perform their duties reasonably.'" *Haley v. City
of Boston*, 657 F.3d 39, 47 (1st Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231
(2009)).

The two–pronged test currently used for assessing whether qualified immunity applies
was first articulated in *Saucier v. Katz*, 533 U.S. 194 (2001). *Pearson*, 555 U.S. at 232 (citing
*Saucier*, 533 U.S. at 201). Under that test, the court first "decide[s] whether the facts that a
plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* (internal
citations omitted). Then, "if the plaintiff has satisfied this first step, the court must decide
whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."
*Id.* (citing *Saucier*, 533 U.S. at 201). "[U]nder either prong, courts may not resolve genuine
disputes of fact in favor of the party seeking summary judgment." *Tolan*, 572 U.S. at 656

(citations omitted). "[W]hen there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019) (quoting *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017)). Since *Pearson*, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 236. This court exercises its discretion in addressing the first prong of qualified immunity first.

As explained below, Calhoon does not show there is a genuine dispute of material fact regarding his claims that Cabral failed to train officers and failed to supervise officers when they pointed a gun at him and conducted an unreasonable search of the motel room. Thus, the court need not reach qualified immunity on these claims. However, Calhoon successfully shows a genuine dispute of material fact as to his claim that Cabral failed to intervene when another officer detained Calhoon. Calhoon overcomes qualified immunity on this claim.

**B.    Failure to Train**

To succeed on a failure to train theory, a plaintiff must show the official was "deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights." *Flores v. County of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014) (citing *Connick v. Thompson*, 563 U.S. 51, 59 (2011)). "While deliberate indifference can be inferred from a single incident when 'the unconstitutional consequences of failing to train' are 'patently obvious,' an inadequate training policy itself cannot be inferred from a single incident." *Hyde v. City of Willcox*, 23 F.4th 863, 875 (9th Cir. 2022) (internal citations omitted).

Calhoon alleges Cabral failed to train officers regarding the use of firearms, handcuffs and the lawful boundaries of searches and seizures. Compl. at 12–14; Reply at 10. At the December hearing, Calhoon conceded Cabral had no duty to train officers before the alleged incident because Calhoon could not point to prior similar incidents. *See generally* Opp'n. Thus, the court grants summary judgment on this claim.

### C. Failure to Supervise and Intervene

Calhoon alleges Cabral is liable under § 1983 for failing to supervise and intervene when subordinate officers assaulted Calhoon and illegally threatened him, illegally searched the motel room and used excessive force when detaining Calhoon. *See generally* Compl. Cabral denies any constitutional violations occurred, and even if they did, claims qualified immunity. *See generally* Mot. In the light most favorable to Calhoon, a reasonable fact finder could not find Cabral committed any constitutional violations in failing to supervise and intervene when officers allegedly assaulted Calhoon and searched the motel room. Cabral was not present for the assault and threats and reasonably relied on information from other officers while supervising the detention and search. However, Calhoon raises a genuine dispute of material fact as to Cabral's failure to intervene when a subordinate officer used excessive force in detaining Calhoon and he survives qualified immunity on this claim.

#### 1. Assault and Threats

First, as described in detail above, Calhoon alleges officers, while facilitating a civil standby, greeted him at the motel room door by pointing a gun directly at his face. Calhoon Dep. at 75:1–2, 73:21–25. However, it is undisputed Cabral did not arrive at the motel until after this incident occurred. Morrison Dep. at 19:24–25, 20:1–3; *see generally* Calhoon Dep. Thus, even if a reasonable jury finds officers used excessive force in pointing a gun at Calhoon's face, Calhoon has not shown Cabral was involved in this action at all. *See Rodriguez*, 891 F.3d at 798; *Starr*, 652 F.3d at 1207–08. Calhoon has also not shown any evidence of a causal connection between Cabral's actions and the assault. *See Rodriguez*, 891 F.3d at 798; Opp'n at 9.

Calhoon also alleges Cabral failed to supervise subordinate officers when they threatened Calhoon with jail time before the officers learned of the alleged eviction request. Calhoon Dep. at 77:9–17. Again, it is undisputed Cabral was not present for this alleged violation. Resp. to UMF 13. Calhoon also has not shown any causal connection between Cabral's conduct and the alleged violation, so Calhoon's claim here cannot survive summary judgment.

9

### 2. Detention and Search

Second, Calhoon alleges Cabral is liable as a supervisor for subordinate officers' Fourth Amendment violations in detaining Calhoon and searching the motel room. "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). "[I]n such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Id.* (citation omitted).

An individual's Fourth Amendment rights cannot be violated if he did not have standing, or an "expectation of privacy," when the search was conducted. *Rakas v. Illinois*, 439 U.S. 128, 143, 148 (1978). Generally, individuals have Fourth Amendment protections in hotel and motel rooms. *United States v. Cormier*, 220 F.3d 1103, 1108–09 (9th Cir. 2000). "Part of what a person purchases when he leases a hotel room is privacy for one's person and one's things." *United States v. Young*, 573 F.3d 711, 716 (9th Cir. 2009) (citing *United States v. Dorais*, 241 F.3d 1124, 1128 (9th Cir. 2001)). However, a guest's retention of a legitimate expectation of privacy is terminated when a motel manager asks the police to evict the resident. *United States v. Bautista*, 362 F.3d 584, 590 (9th Cir. 2004).

As noted above, construing the facts in the light most favorable to Calhoon, Hightower did not explicitly ask Morrison to evict Calhoon. Morrison, the only officer to speak to Hightower, radioed the other officers at the scene, including Cabral, and told them Hightower asked for Calhoon to be evicted. Morrison Dep. at 24:15–18. A reasonable jury could find Morrison misconstrued Hightower's words when informing other officers of the eviction request. In that case, Calhoon would have remained a guest with legitimate privacy interests in the room when officers detained him. *See Cormier*, 220 F.3d at 1108-08; Calhoon Dep. at 76:24–25, 77:1-6, 79:15–25.

1          But Calhoon attempts to hold Cabral, not Morrison, liable for the detention and search. "Where an officer has an objectively reasonable, good–faith belief that he is acting pursuant to proper authority, he cannot be held liable if the information supplied by other officers turns out to be erroneous" and "[is] generally entitled to rely on information obtained from fellow law enforcement officers." *Motley v. Parks*, 432 F.3d 1072, 1081–82 (9th Cir. 2005), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012). "The lynchpin is whether the officer's reliance on the information was objectively reasonable." *Id.* at 1082.

          Calhoon does not dispute Morrison relayed the information pertaining to the eviction to the other officers, including Cabral. *See generally* Resp. to UMF; Reply.  The officers, relying on Morrison's information, believed Calhoon, who refused to exit the room, had lost standing with respect to the hotel room and was trespassing.  Acker Dep. at 50:11–18, 95:10–18.  Calhoon has not provided any evidence showing Cabral's belief in Morrison's statement was unreasonable. *See generally* Opp'n.  Thus, even if the search itself was unconstitutional, Cabral is shielded from liability. *See Motley*, 432 F.3d at 1082.

          Additionally, during the December hearing, Calhoon conceded a quick protective sweep conducted by officers would have been reasonable.  Calhoon instead argues the officers overstepped their legal limits by searching through Calhoon's belongings without a warrant or applicable exceptions.  However, it is undisputed Cabral did not participate in the search but instead was supervising Calhoon outside the room.  Morrison Dep. at 31:3–6; Cabral Dep. at 77:21–25, 78:1–5.  Calhoon has not provided any evidence Cabral ordered officers to search Calhoon's belongings. *Paiva v. City of Reno*, 939 F. Supp. 1474, 1489–90 (D. Nev. 1996) (denying supervisory liability when plaintiffs "presented no evidence" that a police chief "participated in the [unconstitutional] search, was the 'moving force' behind that search, or that he implemented a policy respecting nonconsensual warrantless entries onto private premises"). Although Cabral testified he knew an officer was searching the motel room for a weapon, Cabral Dep. at 78:3–5, this information does not change Cabral's liability.  When officers reasonably perceive a threat of physical harm, a limited search for weapons is allowed. *United States v. King*, 693 F. Supp. 2d 1200, 1220 (D. Haw. 2010) ("[T]he search was reasonable as a goal of

11

public safety as the [agents] did not intend to keep [the suspect] in custody at that time and wanted to avoid the possibility of providing [the suspect] access to a weapon once beyond [the agents'] supervision."); *United States v. Flippin*, 924 F.2d 163, 167 (9th Cir. 1991) ("Once the officer was lawfully in the room, a reasonable suspicion that the defendant was arming herself was sufficient for a Terry frisk and seizure of weapons."). Here, officers conveyed to Cabral even before his arrival they perceived Calhoon acting threateningly towards them. Cabral Dep. at 80:12–25, 81:1–13. Calhoon does not allege Cabral had reason to doubt officer's claims they were reasonably suspicious of the defendant and wanted to check the room for weapons before allowing Calhoon to reenter.

Additionally, in his supplemental briefing, Calhoon claims "Cabral had ample opportunity to himself clarify the purported eviction order." Calhoon Supp. Brief at 3. However, Calhoon points to no evidence indicating Cabral had any reason during the incident to believe the eviction order was false such that he had a duty to second guess Morrison's information.

### 3. Excessive Force

Third, Calhoon claims Cabral is liable for a subordinate officer's use of excessive force given that the officer detained Calhoon and kicked his left knee and groin, conducted a control hold and applied handcuffs that were too tight, all leading to injuries. Calhoon Dep. at 88:24–25, 89:1–9, 89:19–24; Response at 14. Taking the facts in the light most favorable to Calhoon, Cabral can be held liable for Calhoon's wrist injuries, but cannot be held liable for Calhoon's arm and leg injuries.

Assuming an officer kicked Calhoon and conducted a control hold and those actions were uses of excessive force, Calhoon has not shown any causal connection between Cabral's conduct and the alleged violation. Additionally, Cabral cannot be held liable for his lack of intervention because the uses of force happened within seconds and Calhoon has not alleged Cabral had time to intervene. *See Cunningham*, 229 F.3d 1271 at 1289. Calhoon also has not provided evidence indicating Cabral ordered these uses of force against Calhoon. *See* Calhoon Supp. Brief at (arguing Cabral was liable because entire event took place over 55 minutes, but not that Cabral

1  had opportunity to intercede when the actual uses of force took place); *Rodriguez*, 891 F.3d at
2  798.
3       Although it is not entirely clear, to the extent Calhoon argues Cabral ratified or acquiesced
4  to Carlquist's behavior by not reprimanding Carlquist after witnessing the use of allegedly
5  excessive force, Calhoon still does not defeat summary judgment.  A supervisor may be held
6  liable for the actions of his subordinates based on "his acquiescence in the constitutional
7  deprivations." *Dubner v. City of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001).  Courts may
8  find liability when supervisors "condone[], ratify[] , and encourage[] the excessive use of force."
9  *Watkins*, 145 F.3d at 1093 (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.
10 1991)).  If a supervisor "knew of unconstitutional conditions and 'culpable actions of his
11 subordinates' but failed to act" the supervisor can be held liable for "acquiescence in the
12 unconstitutional conduct of his subordinates." *Keates*, 883 F.3d at 1243 (quoting *Watkins*,
13 145 F.3d at 1093).  Here, Calhoon alleges Cabral saw, and therefore knew of, Carlquist's use of
14 excessive force.  It is undisputed Cabral did not reprimand Carlquist on site after witnessing the
15 alleged excessive force. *See generally* Calhoon Dep.; Cabral Dep.  However, Calhoon does not
16 claim Cabral knew of a history of use of excessive force by Carlquist.  Thus, Calhoon cannot
17 defeat summary judgment on this claim.
18      Calhoon also alleges an officer used excessive force in applying handcuffs that were too
19 tight and did not adjust them even after Calhoon complained about the pain.  Interrogatory, Ex. 1
20 at 14.  Viewed in the light most favorable to Calhoon, the record reflects Cabral witnessed
21 Calhoon's handcuffing and had the opportunity to intervene and loosen the handcuffs at any point
22 during the 30 to 40 minutes Calhoon was handcuffed.  Cabral Dep. at 110:14–25, 111:1–22;
23 Calhoon Dep. at 88:2–5; *Cunningham* 229 F.3d 1271 at 1289.  Under this set of facts, Calhoon's
24 claim here survives qualified immunity.  The court must examine if the facts alleged by Calhoon
25 make out a constitutional right, and if so, determine whether the right was clearly established at
26 the time of the violation. *Pearson*, 555 U.S. at 232.  It is clearly established that tight handcuffing
27 can constitute excessive force. *Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004).
28 Additionally, in *Palmer v. Sanderson*, the Ninth Circuit held officers who "fastened [] handcuffs

so tightly around [an individual's] wrist that they cause[] [the individual] pain and le[eave] bruises that last[] several weeks" or "refuse[] to loosen the handcuffs after [the individual] complain[s] of the pain" are not entitled to qualified immunity, and "no reasonable officer could believe that the abusive application of handcuffs was constitutional." 9 F.3d 1433, 1435 (9th Cir. 1993). Here, because Calhoon points to facts supporting the conclusion the officer applied the handcuffs too tightly and ignored Calhoon's complaints about the pain, there is a dispute of material fact regarding whether the officer's application of the handcuffs was a violation of Calhoon's clearly established constitutional right to be free from excessive force. Additionally, the Ninth Circuit has held an officer's duty to intervene when another officer uses excessive force is clearly established. *Cunningham*, 229 F.3d at 1289. Viewing the record in the light most favorable to Calhoon, Cabral had a duty to intervene when he witnessed another officer apply handcuffs too tightly and do nothing when Calhoon complained of the pain. This failure to intervene was a violation of Calhoon's clearly established constitutional right, and thus Calhoon cannot secure summary judgment on grounds of qualified immunity. The court denies Cabral's motion for summary judgment as to Calhoon's claim of failure to intervene during the use of excessive force.

## IV. CONCLUSION

Cabral's motion for summary judgment is **granted in part and denied in part**. The court **denies the motion on Cabral's failure to intervene during an officer's use of excessive force** but **grants the motion on all other claims**. A final pretrial conference is set for April 28, 2023 at 10:00 a.m. The parties shall meet and confer and file a joint status report 14 days prior to the final pretrial conference addressing matters the court should consider in setting a trial date, including whether they request referral to a magistrate judge to conduct a court-convened settlement before the final pretrial conference. *See* E.D. Cal. L.R. 282; Fed. R. Civ. P. 16.

This order resolves ECF No. 86.

IT IS SO ORDERED.

DATED: February 7, 2023.

CHIEF UNITED STATES DISTRICT JUDGE